Joseph E. Floren *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Telephone: 415.442.1391
Facsimile: 415.442.1001
jfloren@morganlewis.com

Joseph E. Mais, Bar No. 005470
Todd R. Kerr, Bar No. 013286
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
jmais@perkinscoie.com
tkerr@perkinscoie.com
Docketphx@perkinscoie.com

*Attorneys for Nominal Defendant*
*Apollo Group, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Smith, derivatively on behalf of Apollo Group, Inc., <br><br> Plaintiff, <br><br> v. <br><br> John G. Sperling, Peter V. Sperling, Charles B. Edelstein, Gregory W. Cappelli, Terri C. Bishop, Dino J. Deconcini, Samuel A. Dipiazza, Jr., Stephen J. Giusto, Roy A. Herberger, Jr., Ann Kirschner, K. Sue Redman, James R. Reis, Manuel F. Rivelo, George Zimmer, Joseph D'Amico, Gregory J. Iverson, Brian L. Swartz, Brian Mueller, P. Robert Moya, Robert W. Wrubel, William J. Pepicello, and Does 1-25, inclusive, <br><br> Defendants. <br><br> v. <br><br> Apollo Group, Inc., an Arizona corporation, <br><br> Nominal Defendant. | No. 2:11-cv-00722-PGR <br><br><br> **NOMINAL DEFENDANT APOLLO GROUP, INC.'S MOTION TO STAY** <br><br> <u>**ORAL ARGUMENT REQUESTED**</u> |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................ 2

    A.   Proceedings in the Apollo II Class Action – August 2010 to Present. ................................................................................................... 2

    B.   Proceedings in the Instant Smith Action – April 2011 to Present. ................................................................................................... 4

III. ARGUMENT. ................................................................................................ 5

    A.   This Case Should Be Stayed Pending Resolution  of the Apollo II Class Action. ...................................................................... 7

    B.   Arizona Law Provides For A Stay of this Action Pending the Inquiry  by the Independent Committee Appointed by the Company. ........................................................................................... 10

    C.   The PSLRA Requires, at Minimum, a Stay of Discovery in this Action. ......................................................................................... 16

IV. CONCLUSION. ........................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bamboo Partners v. Nelson, et al.*,
No. CV-06-1973-PHX-SRB (D. Ariz. May 18, 2007) .......................................... 7, 8, 9

*Biondi v. Scrushy*,
820 A.2d 1148, 1164-65 (Del. Ch. 2003) .................................................. 14

*Breault v. Folino*,
No. SACV010826GLTANX, 2002 WL 31974381 (C.D. Cal. Mar. 15, 2002)............. 9

*Brudno v. Wise*,
No. Civ.A.19953, 2003 WL 1874750 (Del. Ch. Apr. 1, 2003) .............................. 9, 10

*Cucci v. Edwards*,
No. SACV 07-532 PSG (MLGx), 2007 WL 3396234 (C.D. Cal. Oct. 31, 2007)......... 9

*Curtis v. Nevens*,
31 P.3d 146 (Colo. 2001) ............................................................. 15

*Daily Income Fund v. Fox*,
464 U.S. 523 (1984).................................................................. 5, 16

*In re Altera Corp. Deriv. Litig.*,
No. C 06-03447-JW, 2006 U.S. Dist. LEXIS 76197 (N.D. Cal. Oct. 11, 2006)......... 16

*In re AOL Time Warner, Inc. Sec. Litig.*,
2006 WL 1997704 (S.D.N.Y. July 13, 2006) ............................................. 16

*In re Countrywide Fin. Corp. Deriv. Litig.*,
542 F. Supp. 2d 1160 (C.D. Cal. 2008) .................................................. 16

*In re Marvell Tech. Group. Ltd. Deriv. Litig.*,
No. C-06-03894-RMW, 2007 U.S. Dist. LEXIS 41268 (N.D. Cal. May 29,
2007) ............................................................................... 16

*In re Tibco Software, Inc.*,
2006 WL 1469654 (N.D. Cal. May 25, 2006) ............................................. 13

*In re Trump Hotel Shareholder Deriv. Litig.*,
1997 U.S. Dist. LEXIS 11353 (S.D.N.Y. Aug. 5, 1997)............................... 16

*Jones ex rel. CSK Auto Corp. v. Jenkins*,
503 F. Supp. 2d 1325 (D. Ariz. 2007) .................................................. 13

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ........................................................... 6

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) .......................................................... 7

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ............................................. 7

*Renfro v. FDIC*,
    773 F.2d 657 (5th Cir. 1985) .............................................. 5

*Ross v. Bernhard*,
    396 U.S. 531 (1970) .......................................................... 5

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
    365 F.3d 353 (5th Cir. 2004) ............................................. 13

*Spiegel v. Bruntrock*,
    571 A.2d 767 (Del. 1990) .................................................. 13

*Stack v. Lobo*,
    903 F. Supp. 1361 (N.D. Cal. 1995) ..................................... 14

*Wright v. Krispy Kreme Doughnuts, Inc.*,
    2005 WL 1719927 (M.D.N.C. April 4, 2005) ........................... 15

*Zapata Corp. v. Maldonado*,
    430 A.2d 779 (Del. 1981) .................................................. 14

**STATUTES**

15 U.S.C. § 78u-4(b)(3)(B) ................................................... 16

A.R.S. § 10-740(1) ......................................................... 6, 13

A.R.S. § 10-742 ............................................................... 6

A.R.S. § 10-743 ...................................................... 1, 6, 11, 14

A.R.S. § 10-744 ...................................................... 6, 14, 15

A.R.S. § 10-801(B) .......................................................... 15

-ii-

1   **I.      INTRODUCTION**

2         Nominal Defendant Apollo Group, Inc. ("Apollo" or the "Company") moves to

3   stay this putative shareholder derivative action filed in its name and on its behalf.  This

4   action should be stayed for three independent reasons.

5         First, a stay is necessary to allow the Company to defend itself in the earlier-filed

6   securities class action pending in this Court concerning the same alleged conduct by the

7   same persons, without the conflict and interference that would certainly result were this

8   case and the class action to proceed simultaneously.  The earlier-filed *Apollo II* class

9   action concerns the same subject matter, events, principal legal claims, and most of the

10  same parties as this case.  But the Company must **defend** against the claims in that case,

11  whereas Plaintiff here seeks to **prosecute** the same claims on behalf of the Company.  It

12  would be fundamentally inconsistent with the sole purpose of this shareholder derivative

13  action – to protect the Company's interests – for this case to proceed in the name and on

14  behalf of the Company to seek purported remedies for the same alleged conduct for which

15  the Company is simultaneously alleged to be **liable** to shareholders in the earlier-filed

16  class action.  In addition to undermining the Company's defense of the class action,

17  simultaneous prosecution of this derivative case would be a waste of the parties' and

18  Court's resources.  Because it involves the same subject matter, claims, and most of the

19  same parties, the resolution of the class action will have a direct bearing on many of the

20  crucial issues in this case, including most obviously whether the Company has incurred or

21  will incur recoverable harm as a result of the class action itself, as alleged in Plaintiff's

22  Complaint (at ¶¶ 173, 218).  The stay will prejudice no one.  Accordingly, it is in the

23  Company's best interests to stay this derivative action for the duration of the class action.

24        Second, Arizona law explicitly provides for a stay of a derivative action where, as

25  here, Apollo has appointed a Special Committee that has "commence[d] an inquiry into

26  the allegations made in the demand or complaint" on the Company's behalf.  A.R.S. § 10-

27  743.  The Special Committee, composed of two independent Apollo directors and a third

28  experienced, independent former corporate executive, and represented by competent and

1   experienced independent counsel, was created before this action was filed and is in the

2   process of conducting its review, which the Company expects will ultimately lead to a

3   determination regarding the Company's best interests with respect to the claims alleged in

4   Plaintiff's Complaint, and thus likely to the dismissal, prosecution, or other disposition of

5   this action.   A stay of this litigation while that investigation is pending is plainly

6   warranted under Arizona law, is well supported by cases in jurisdictions that have

7   addressed similar issues, and will assist in conserving the parties' and the Court's

8   resources in the meantime.

9       <u>Finally</u>, at minimum, a stay of discovery is mandated by the Private Securities

10   Litigation Reform Act ("PSLRA") because the individual Defendants will, if and when

11   they are required to respond to the Complaint, file motions to dismiss, as well as due to

12   the now-pending motions to dismiss the same claims in the related *Apollo II* class action.

13   **II.   BACKGROUND.**

14       **A.   Proceedings in the *Apollo II* Class Action – August 2010 to Present.**

15       On August 13, 2010, the first of three putative class actions was filed against

16   Apollo and six of its current and former officers and directors (all of whom are also

17   named as Defendants in this later-filed derivative action) alleging claims under the federal

18   securities laws concerning Apollo's student recruiting, financial aid, enrollment, financial

19   results, internal controls, and alleged insider trading.   [*Gaer v. Apollo Group Inc.*, No.

20   CV-10-1735-PHX-JAT].   Similar putative securities class actions alleging the same

21   claims were filed against Apollo and the same individual defendants, as well as three

22   other Apollo personnel (also all named in this action) on September 23, 2010 (*Fitch v.

23   Apollo Group Inc.*, No. CV-10-2044-PHX-JAT) and October 4, 2010 (*Roth v. Apollo

24   Group Inc.*, No. CV-10-2121-PHX-JAT).   By order dated November 24, 2010, the district

25   court consolidated the three cases under the caption *In re Apollo Group, Inc. Securities

26   Litigation*, No. CV-10-1735-PHX-JAT ("*Apollo II*"), and appointed a group of lead

27

28

1  plaintiffs to file an amended consolidated complaint.[1]  [*Apollo II*, Docket No. 42 (attached

2  as Exhibit A)].

3      The *Apollo II* lead plaintiffs filed their currently operative Consolidated Complaint

4  ("*Apollo II* Complaint") on February 18, 2011, asserting claims under Section 10(b) of the

5  Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b-5

6  thereunder, 17 C.F.R. § 240.10b-5, and Sections 20(a) and 20A of the Exchange Act, 15

7  U.S.C. §§ 78t(a), 78t-1.  [*Apollo II*, Docket No. 45 (attached as Exhibit B)].  It names as

8  defendants Apollo and nine of its current and former officers and directors – John

9  Sperling, Peter V. Sperling, Joseph L. D'Amico, Gregory W. Cappelli, Charles B.

10  Edelstein, Brian L. Swartz, Brian E. Mueller, Gregory J. Iverson and William J. Pepicello.

11  *Id.*  The individual defendants named in *Apollo II* are, respectively, Apollo's founder and

12  Chairman of the Board, the Vice Chairman of its Board, its President and Chief Operating

13  Officer, its two Co-Chief Executive Officers, its Chief Financial Officer, its former

14  President, its Chief Accounting Officer, and the President of Apollo's principal

15  subsidiary, the University of Phoenix.  *See id.* ¶¶ 25-33.  The *Apollo II* Complaint alleges

16  that Apollo and the other defendants concealed material information and made materially

17  false and misleading statements relating to the Company's student recruiting, financial

18  aid, and enrollment practices, financial accounting, and internal controls with respect to

19  financial reporting during the period May 21, 2007 through October 13, 2010, which is

20  also alleged to be the class period.  *See id.* ¶¶ 1, 143-250.  The *Apollo II* Complaint also

21  alleges claims based on purported insider trading by four of the individual defendants

22  during the October 2007 through July 2010 time period.  *Id.* ¶¶ 302-18.

23      Apollo and the other defendants filed motions to dismiss the *Apollo II* Complaint

24  on April 19, 2011, along with motions to strike portions of the Complaint.  [*Apollo II*,

25  Docket Nos. 69-71].  Those motions are now fully briefed before Judge Teilborg.

26

---

27  [1]  Defendants, joined by Apollo, have moved that this action be transferred to Judge
Teilborg, who is presiding over *Apollo II* as well as an earlier securities class action

28  against Apollo now in post-judgment proceedings.  (*Apollo II*, Docket Nos. 82, 84; *see
also In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT ("*Apollo I*")).

**B.      Proceedings in the Instant *Smith* Action – April 2011 to Present.**

Plaintiff Darlene Smith filed a shareholder derivative complaint to initiate this action on April 12, 2011.  [Docket No. 1 (attached as <u>Exhibit C</u>)].  The Complaint names as Defendants twenty-one current and former Apollo officers and directors, including the nine top executives and directors of the Company who are named as defendants in *Apollo II*.[2]  The Complaint alleges substantially the same claims as *Apollo II*:

- The Complaint alleges that Defendants caused Apollo to engage in purported unscrupulous practices with regard to the Company's student recruiting, financial aid, and enrollment practices, financial accounting, and internal controls with respect to financial reporting and to issue materially false and misleading statements that supposedly inflated the price of Apollo stock; this is the same alleged conduct that is at issue in *Apollo II*.

- Plaintiff's allegations here concern most of the same public statements at issue in *Apollo II*, over the same May 2007 to October 2010 time period.

- Like the *Apollo II* Complaint, Plaintiff's Complaint here is substantially based on speculation about Apollo's practices as alluded to in an August 4, 2010 report on the for-profit higher education industry by the Government Accountability Office.

- Plaintiff also claims, as do the lead plaintiffs in *Apollo II*, that certain Defendants engaged in alleged insider trading of Apollo stock when they sold stock at the purportedly inflated prices during the 2007 to 2010 time period.  As to Defendants John Sperling, Peter Sperling, Joseph D'Amico, and William Pepicello, the Complaint challenges exactly the same sales over the same 2007 to 2010 time period that are at issue in *Apollo II*.

- As to the same nine individual Defendants named in *Apollo II*, the Complaint here alleges the same claim for alleged violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  *Id.* ¶¶ 185-93.

- As to the fourteen "Director Defendants" (four of whom were also named in *Apollo II*), the Complaint asserts the same claim for alleged violation of Section 20(a) of the Exchange Act.

- The Complaint alleges that all Defendants violated their state law fiduciary duties to Apollo and are liable to the Company for waste and unjust enrichment based on the conduct alleged – the same conduct at issue in *Apollo II*.

---

[2]    The named Defendants in the Complaint are John G. Sperling, Peter V. Sperling, Charles B. Edelstein, Gregory W. Cappelli, Terri C. Bishop, Dino J. DeConcini, Samuel A. DiPiazza, Jr., Stephen J. Giusto, Roy A. Herberger, Jr., Ann Kirschner, K. Sue Redman, James R. Reis, Manuel F. Rivelo, George Zimmer, Joseph D'Amico, Gregory J. Iverson, Brian L. Swartz, Brian Mueller, P. Robert Moya, Robert W. Wrubel, and William J. Pepicello.

1     In short, the claims that Plaintiff Smith seeks to assert **on behalf of** Apollo in this

2  action are substantially the same as those being asserted **against** Apollo in the earlier-filed

3  *Apollo II* class action.  In the class action, the Company is alleged to be liable to a putative

4  class of shareholders for the very same purported actions of those individuals against

5  whom Plaintiff here seeks to assert claims belonging to the Company.

6     Following receipt of the Complaint, counsel informed Plaintiff's counsel that the

7  Company intended to seek to stay the action on the basis of the previously filed *Apollo II*

8  class action and on other grounds, and that the Company had created an independent

9  committee, which had retained independent counsel, to conduct an inquiry into the claims

10 alleged.  All parties stipulated to a briefing schedule on this Motion to Stay (Docket

11 Nos. 17, 47), which this Court approved by Order dated July 26, 2011 (Docket No. 48).

12 The Court's Order further provides that Defendants shall not be required to answer or file

13 Rule 12 motions while this Motion is pending, with such pleadings being deferred until

14 after a stay expires or is denied.  *Id.*

15 **III.   ARGUMENT.**

16    This is a shareholder derivative action in which Plaintiff, as a shareholder of

17 Apollo, seeks to sue in the name and on behalf of Apollo in order to enforce the

18 Company's alleged rights of action against the named Defendants.  *See Ross v. Bernhard*,

19 396 U.S. 531, 538 (1970) (The corporation "is the real party in interest, the stockholder

20 being at best the nominal plaintiff.  The proceeds "of the action belong to the corporation

21 and it is bound by the result of the suit.").  Shareholder derivative actions are limited

22 exceptions to "the basic principle of corporate governance that the decisions of a

23 corporation – including the decision to initiate litigation – should be made by the board of

24 directors or the majority of shareholders."  *Daily Income Fund v. Fox*, 464 U.S. 523, 530

25 (1984).  To prevent abuse of this device, and ensure that the action is in the best interests

26 of a corporation, a shareholder must show that "the corporation itself had refused to

27 proceed after suitable demand, unless excused by extraordinary conditions."  *Ross*, 396

28 U.S. at 534; *see also Renfro v. FDIC*, 773 F.2d 657, 659 (5th Cir. 1985) ("Since the

1   corporation alone has standing to sue both insiders and outsiders for actionable wrongs

2   committed against it, courts have been careful to regard the derivative suit, as an

3   extraordinary remedy, available to the shareholder, as the corporation's representative,

4   only when there is no other road to redress.") (citation and internal quotations omitted).

5       Arizona law[3] accordingly allows shareholder derivative actions to be maintained

6   only to enforce the rights of a corporation, A.R.S. § 10-740(1); only by a shareholder who

7   "[f]airly and adequately represents the interests of the corporation in enforcing the right of

8   the corporation," *id.* § 10-741(2); and only after making written demand upon the

9   corporation to take suitable action ninety days before filing suit, *id.* § 10-742.  Moreover,

10   Arizona law authorizes the Court to stay a shareholder derivative action where, as here,

11   the Company has commenced an inquiry into the allegations made, *id.* § 10-743, and to

12   dismiss a derivative action on the Company's motion on any legal grounds, including that

13   an independent panel determines in good faith and based upon reasonable inquiry that the

14   maintenance of the lawsuit is not in the Company's best interests, *id.* § 10-744.

15       A stay of this action is clearly in the Company's best interests, and is warranted on

16   three independent grounds.  <u>First</u>, in light of the earlier-filed *Apollo II* class action against

17   Apollo involving the same operative events, many of the same Apollo officers and

18   directors, and the same legal and factual issues, a stay is necessary to prevent the

19   prosecution of this action from harming Apollo's interests in defending the *Apollo II* case,

20   in which it is alleged to be liable as the lead defendant for the same conduct that forms the

21   basis for the claims sought to be asserted on its behalf here.  A stay of this action pending

22   resolution of *Apollo II* will also promote judicial economy and prevent duplicative and

23   potentially conflicting rulings on the same and overlapping legal and factual issues in the

24   two cases.  <u>Second</u>, Arizona law expressly allows for a stay to allow a corporation to

25   conduct an investigation.  <u>Finally</u>, and at minimum, a stay of discovery is required by the

26

27   [3]   Arizona law governs whether Plaintiff may maintain this derivative suit in the name of
Apollo, an Arizona corporation.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90,

28   101 (1991); Complaint ¶¶ 12, 14.

PSLRA, which provides for an automatic stay until Plaintiff's claims are at issue.

### A.   This Case Should Be Stayed Pending Resolution of the *Apollo II* Class Action.

A stay of this action is warranted because any prosecution of the instant derivative action on Apollo's behalf would undermine the Company's efforts to defend itself in the earlier-filed *Apollo II* class action.   "A district court has discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).   The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254.   In exercising its discretion whether to stay a case, the Court must "weigh competing interests and maintain an even balance." *Id.* at 255.   The competing interests include any harm that may result from a stay, the hardship or prejudice that would result if the stay were denied, and "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). Consideration of these interests counsels in favor of a stay here, because the prosecution of this action on the Company's behalf would undermine its defense of the *Apollo II* shareholder class action, while the stay would harm no one and promote judicial economy.  *See Bamboo Partners v. Nelson, et al.*, No. CV-06-1973-PHX-SRB (D. Ariz. May 18, 2007) (staying derivative claim against Apollo Group due to pending shareholder class action), [Exhibit D].

As an initial matter, comparison of the Complaint with the allegations in the *Apollo II* Complaint demonstrates that the allegations of wrongdoing in *Apollo II* are based on the same acts that are the subject of the instant putative derivative suit.  Derivative Plaintiff asserts that the very same purported securities fraud alleged in *Apollo II* gives rise to the same nine individual Defendants' alleged liability **to** the Company in this derivative action. *Compare, e.g.*, Complaint ¶¶ 186-193, 195-97 *with Apollo II* Complaint ¶¶ 333-

342, 344-47. Both actions plead, as their central claims (which are the sole basis for this Court's jurisdiction), similar violations of Section 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 thereunder. *Id.*

Derivative Plaintiff here challenges the same purportedly false statements regarding enrollment, financial aid, student recruiting, and regulatory oversight that are the basis of the class action claims against the Company in *Apollo II*. *Compare* Complaint ¶¶ 68-126 *with Apollo II* Complaint ¶¶ 144-250. The allegations focus on the same period of time—May 2007 to October 2010—and rely on and excerpt from the same statements made in the Company's annual and quarterly reports, investor conferences, and press releases. *Id.*

Nine individual Defendants are named in both *Apollo II* and the instant action.[4] These defendants in common include the Company's founder and principal executive officers—including Apollo Co-Chief Executive Officers, its Chief Financial Officer, its Chief Accounting Officer and Controller, and its President and Chief Operations Officer. Of course, the Company itself is also a party in both cases – as the lead defendant in *Apollo II*, and as the nominal defendant and real party in interest on Plaintiff's side in the instant putative derivative suit.

Under strikingly similar circumstances, Judge Bolton in *Bamboo Partners* stayed a shareholder derivative action filed on behalf of Apollo during the pendency of a parallel securities class action against Apollo because a "clear case of hardship or inequity" would result if the Company had to defend the *Apollo I* class action at the same time as a derivative claim was being pursued on its behalf regarding the same claims and underlying facts. [Exhibit D at 6 (quoting *Landis*, 299 U.S. at 254)]. There, as here, the derivative and class actions involved the same alleged conduct by the same parties, allegedly making Apollo liable to shareholders in the class action, allegedly making the

---

[4] The twelve other individuals also named in this action are all current or former Apollo directors or officers who purportedly engaged or assisted in the same conduct. *See* Complaint ¶¶ 4-7, 16-35.

DB2/ 22558945.6

1    individual defendants liable to Apollo in the derivative action, and subjecting Apollo to a

2    diversion of resources and potential harm to the class action defense in the event both

3    actions proceeded simultaneously.   *Id.* at 7-8.   Here, as in *Bamboo Partners*, the

4    prosecution of a derivative suit is not in the Company's best interests pending the

5    resolution of the *Apollo II* securities class action arising from the same facts, and where

6    the damages in the derivative action depend, in part, on the outcome of the class action.

7    *See id.* at 7-10.

8         Judge Bolton's order in *Bamboo Partners* is consistent with other court decisions

9    staying derivative litigation to allow class actions to proceed first in order to avoid

10   precisely the prejudicial conditions presented here.   *See, e.g.*, *Breault v. Folino*, No.

11   SACV010826GLTANX, 2002 WL 31974381 (C.D. Cal. Mar. 15, 2002).   The district

12   court in *Breault* recognized that the pursuit of shareholder derivative litigation necessarily

13   interferes with a corporation's defense of a parallel class action:

14           Prosecution of this action will conflict with [the corporation's]
             defense of the pending class actions. Defendants are likely
15           witnesses who [the corporation] will rely upon in the pending
             cases against it. Plaintiffs will need to undermine Defendants'
16           credibility to pursue this action. [The corporation] would be
             harmed by Plaintiffs' pursuit of this derivative action now
17           because its defense in the pending class actions also would be
             challenged in this suit. This action will divert [the
18           corporation's] financial and management resources from the
             pending litigations against it. At this time, it is not in [the
19           corporation's] best interest to litigate Plaintiffs' allegations.

20   *Id.* at *2 (internal citations omitted); *see also Cucci v. Edwards*, No. SACV 07-532 PSG

21   (MLGx), 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) ("prosecution of the

22   Shareholder Derivative Action would likely conflict with Powerwave's defense of the

23   Securities Class Action, since the shareholder derivative Plaintiffs would need to prove

24   allegations that would seriously undermine Powerwave's defense of the class action").

25        Similarly, in *Brudno v. Wise*, No. Civ.A.19953, 2003 WL 1874750 (Del. Ch.

26   Apr. 1, 2003), the Delaware Chancery Court stayed a shareholder derivative action in

27   favor of a prior pending federal securities class action because derivative plaintiff sought

28   damages from the underlying class action as part of its claims brought on behalf of the

-9-

corporation. *See id.* at *1, *4 ("[T]his case cannot rationally proceed to trial in advance of the Federal Securities Action. How the Federal Securities Action . . . come[s] out and what [it] cost[s] are crucial to the final determination of this case as pled, because this case is, in reality, a claim primarily for indemnification.").  The same concerns loom large here, because Plaintiff seeks as damages on behalf of Apollo "potentially hundreds of millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions," Complaint ¶ 218, expressly referring to the pending *Apollo II* class action.  *Id.* at ¶ 173.

No prejudice will result to Plaintiff, to Apollo, or to any other party from the stay of this action.  The parallel claims asserted in *Apollo II* have not been adjudicated, and no wrongdoing by Defendants or anyone else has been established with respect to the claims alleged.  As a result, any litigation in this action over the Company's purported right to recover damages that have not yet been incurred in connection with *Apollo II* would be fundamentally premature.  Moreover, the filing of the case itself ensures that no prejudice to the Company's rights can occur during the pendency of the stay – the filing of the action tolls the statutes of limitations on the claims alleged, all Defendants have appeared, and the filing of the action (as well as *Apollo II*) imposed document retention requirements as a matter of law upon all Defendants under Exchange Act Section 21D(b)(3)(C)(i), 15 U.S.C. § 78u-4(b)(3)(C)(i).

In short, there is no reason why resolution of this case should not await resolution of the earlier filed class action.

### B.    Arizona Law Provides For A Stay of this Action Pending the Inquiry by the Independent Committee Appointed by the Company.

Apollo is an Arizona corporation.   [Complaint ¶ 14].   As such, Arizona law governs all aspects of Plaintiff's alleged right to file and maintain this derivative lawsuit on Apollo's behalf.  Arizona law expressly authorizes the Court to stay this derivative proceeding while the corporation conducts an internal review of the allegations:

> "If the corporation commences an inquiry into the allegations made in the demand or complaint, the court may stay any

-10-

derivative proceeding for such period as the court deems appropriate."

A.R.S. § 10-743.   Apollo, through its independent Special Committee, has initiated exactly such an inquiry into the acts, practices, and other matters alleged in Plaintiff's Complaint.

Plaintiff's counsel sent a pre-litigation demand letter to the Company on December 8, 2010.  [Complaint, Ex. A].  Thereafter, the Company's Board of Directors created a Special Committee in December 2010 to investigate Plaintiff's allegations and determine whether or not prosecution of the claims, or any part of them, is in the best interests of the Company and its shareholders, and what action the Company should take with respect thereto.  [Garvey Decl. ¶ 4].  The Special Committee consists of independent Directors Samuel A. DiPiazza, Jr. and Manuel F. Rivelo, and a third independent person who has no position or prior relationship with the Company, Clint J. Magnussen.  [*Id.* ¶ 5].  The Special Committee engaged as its independent counsel George Garvey of the law firm Munger, Tolles & Olson to assist it in its investigation.  [*Id.* ¶ 4].

The members of the Special Committee and their counsel are clearly well qualified to conduct an appropriate, thorough, and independent review of Plaintiff's allegations on behalf of the Company, and to make an independent determination of where the Company's best interests lie with respect to the claims alleged by Plaintiff:

- Mr. DiPiazza, a respected financial reporting expert, served as the Global CEO of PricewaterhouseCoopers International Ltd. from 2002 until his retirement in 2009.  He joined Citigroup, Inc. as Vice Chairman of its Institutional Clients Group in 2011.  During his 36-year career with PricewaterhouseCoopers and its predecessor Coopers & Lybrand, Mr. DiPiazza also served as the Chairman and senior partner of its U.S. operations and as a member of its global leadership team.  He is a trustee of the International Accounting Standards Committee Foundation and board member of other civic organizations, including The Conference Board

-11-

(executive committee member and past Chairman of the Board of Trustees),
the Mayo Clinic (Board of Trustees member), the National September 11
Memorial & Museum (executive committee member), and St. Patrick's
Cathedral in New York (Board member).  He is also an independent director
of DirecTV.  Mr. DiPiazza has never been an employee of the Company.
He was appointed as an independent member of the Company's Board of
Directors on December 7, 2009.   [*See id.* ¶ 5 & Exs. B-C].

- Mr. Rivelo is a Senior Vice President of Enterprise Systems and Operations
at Cisco Systems, Inc., a leading information technology and networking
company, where he has been employed since 1992.  He has never been
employed by the Company.  He was appointed as an independent Director
on March 11, 2009.  [*See id.* ¶ 5 & Ex. B].

- Mr. Magnussen spent 30 years in the information technology business,
including service in senior management positions of Courier Terminal
Systems and ITT Courier in Tempe, Arizona from 1973 to 1981 and as
Chairman, CEO, and President of Phoenix-based computer graphics
manufacturer Kurta Corporation from 1982 to 1994.  Since 1994, Mr.
Magnussen has remained active in the local business community and served
on the boards of several civil, cultural, business, and educational
institutions, including the Heard Museum (past Board President), the
Governor's Council on Quality (past Board member), and the Arizona
Chamber of Commerce (past Chairman).  He has also served on several
corporate boards, including Able Distributing (former director), Pinacor
(former advisory board member), Microage (current advisory board
member), and Caliber Bank (former director).  Mr. Magnussen has no prior
affiliation with the Company or any Defendant.  [*See id.* ¶ 5 & Ex. D].

- Mr. Garvey, counsel to the Special Committee, is a partner in the law firm
of Munger, Tolles & Olson LLP who specializes in complex civil litigation

with an emphasis on securities and corporate governance issues and has substantial experience during his 32 years of law practice in both the representation of public companies in securities and derivative litigation and in the conduct of independent investigations on behalf of public company boards or committees thereof.  Neither Mr. Garvey nor Munger Tolles has previously represented Apollo or any of the individual Defendants.  [*See id.* ¶¶ 2-3 & Ex. A].

Each of the members of the Special Committee is an "independent person" as defined under Arizona law with respect to the subject matter of the inquiry.  *See* A.R.S. § 10-740(2) ("'Independent person' means a person with no personal interest in the transaction and no personal or other relationship which influences the person.").  That Plaintiffs named two of the Special Committee's members as Defendants in the Complaint – along with every member of the Company's Board of Directors – is of no moment, because the Complaint makes no allegations of potentially actionable omissions, misstatements, or other wrongdoing by either Messrs. DiPiazza or Rivelo personally. Instead, it merely lumps them together with other members of the Board and Board Committees on which they have served since 2009 and makes generalized and conclusory allegations against those groups.  Such generalized allegations of wrongdoing on the part of the Board are insufficient to show that these particular directors lack independence. *See, e.g.*, *Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1332-41 (D. Ariz. 2007) (rejecting "boilerplate" and "conclusory" claims that directors lacked independence based on their alleged conduct as members of the board or committees, or on general allegations of bias or potential liability); *Spiegel v. Bruntrock*, 571 A.2d 767, 774 n.4 (Del. 1990) ("that all directors are named as defendants in a derivative complaint is not determinative of their lack of independence.") (citation omitted). [5]

---

[5]   The Complaint's blanket allegations against the "Director Defendants" also constitutes forbidden "group pleading" that cannot pass muster as to Messrs. DiPiazza or Rivelo under federal law.  *See, e.g., Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 363-65 (5th Cir. 2004) (rejecting group pleading); *In re Tibco Software,*

-13-

1    In all events, the Court need not determine the Committee's independence now.

2    There is no requirement that the Court address or make findings concerning the Special

3    Committee's independence at this juncture, when its inquiry is in the early stages, no facts

4    have been determined, and the *Apollo II* action that generated this derivative litigation is

5    in its early stages.  Rather, the pendency of ***any*** "inquiry" by the Company into the

6    allegations of the Complaint supports a stay under Arizona law.  *See* A.R.S. § 10-743.  Of

7    course, that Apollo's Special Committee is composed of well-qualified independent

8    persons and represented by able independent counsel confirms that the inquiry is being

9    conducted professionally, properly, and that it is in the Company's best interests for the

10   Court to stay this action while the Special Committee's inquiry is ongoing.

11   Delaware courts, applying the same standard of independence, likewise hold that a

12   stay of derivative litigation should issue pending a review by a board committee unless the

13   "undisputed facts" show the members thereof lack independence with respect to the

14   matters under review.  *See Biondi v. Scrushy*, 820 A.2d 1148, 1164-65 (Del. Ch. 2003)

15   ("if there is any litigable doubt about whether a special litigation committee will

16   ultimately be found capable of independently issuing a report recommending the

17   termination of derivative litigation that will command deference under *Zapata*, the court

18   should stay the litigation for a reasonable period of time to permit the committee to finish

19   its work.") (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981)); *accord* A.R.S.

20   § 10-744(B) (plaintiff has the burden of proving by clear and convincing evidence that a

21   derivative proceeding should not be dismissed when a motion to dismiss is filed by the

22   corporation based upon a recommendation by a panel of independent persons appointed

23   by the Court).  Indeed, other courts have readily granted stays in cases such as this one,

24

25   *Inc.*, 2006 WL 1469654 at * 27 (N.D. Cal. May 25, 2006) ("Following this precedent,
     courts in this district are increasingly finding that the group pleading doctrine is
26   contrary to the [Reform Act]").  *See also Stack v. Lobo*, 903 F. Supp. 1361, 1376
     (N.D. Cal. 1995) ("Ordinarily, outside directors are not involved in a corporation's
27   day-to-day affairs. Thus, the group pleading doctrine may be invoked as to outside
     directors only if they . . . participated in the day-to-day management of the part of the
28   company involved.") (citation omitted).

1   where a Special Committee of the Board of Directors is reviewing allegations of a

2   derivative plaintiff.  *See, e.g., Curtis v. Nevens*, 31 P.3d 146, 154 (Colo. 2001) ("The

3   common practice today in derivative litigation is to stay discovery by the plaintiff pending

4   preparation and submission to the court of a report by the board or a committee appointed

5   by the board to evaluate the action and its impact on the corporation.") (quoting 2

6   American Law Institute, Principles of Corporate Governance: Analysis and

7   Recommendations § 7.06 cmt. C (1994)); *see also Wright v. Krispy Kreme Doughnuts,*

8   *Inc.*, 2005 WL 1719927 (M.D.N.C. April 4, 2005) (granting nominal defendant's motion

9   to stay to allow special committee to complete an investigation under North Carolina law).

10          The Special Committee's inquiry into the allegations of the Complaint is well

11   under way.  [Garvey Decl. ¶ 6].  At the appropriate time, and upon the completion of its

12   inquiry, the Company anticipates that the Special Committee will determine whether the

13   Company's best interests support dismissal, prosecution, or some other disposition with

14   respect to the Company's claims alleged in this derivative action.  In the event the Special

15   Committee ultimately concludes that maintenance of this action is not in the Company's

16   best interests, in whole or in part, the Company will then ask the Court to dismiss this

17   action under the authority provided in A.R.S. § 10-744.  In the meantime, however, in

18   light of the ongoing investigation, the Company requests that the Court stay this action

19   until the Special Committee concludes its review and makes its recommendations

20   concerning the appropriate disposition of the claims alleged in this case.

21          Proceeding with the litigation of these claims that belong to the Company before its

22   investigation concludes would serve no useful purpose and would be inconsistent with the

23   interests of the Company that the action was supposedly filed to protect.  Among other

24   things, the Special Committee's review may lead to a resolution of the claims without the

25   expenditure of additional resources by the parties, their counsel, or the Court.  A stay

26   would also respect the strong public policy that a corporation's board of directors should

27   exercise control over the corporation.  *See* A.R.S. § 10-801(B) ("All corporate powers

28   shall be exercised by or under the authority of and the business and affairs of the

1    corporation shall be managed under the direction of its board of directors."); *see also*

2    *Daily Income Fund*, 464 U.S. at 530.

3    **C.**    **The PSLRA Requires, at Minimum, a Stay of Discovery in this Action.**

4    The PSLRA provides for a stay of all discovery in any action alleging claims of

5    securities fraud under the Exchange Act until such case is at issue, stating in relevant part:

6    "In any private action under this chapter, ***all discovery and***

7    ***other proceedings shall be stayed during the pendency of any*** ***motion to dismiss***, unless the court finds upon the motion of

8    any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."

9    15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).  "[T]he plain language of the stay provision

10    clearly encompasses any action that asserts claims under the 1934 Securities Exchange

11    Act," including shareholder derivative actions such as this one.  *In re Countrywide Fin.*

12    *Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008) (holding PSLRA stay

13    applies to shareholder derivative action alleging Exchange Act claims); *see also In re*

14    *Marvell Tech. Group. Ltd. Deriv. Litig.*, No. C-06-03894-RMW, 2007 U.S. Dist. LEXIS

15    41268 (N.D. Cal. May 29, 2007) (same); *In re Altera Corp. Deriv. Litig.*, No. C 06-03447-

16    JW, 2006 U.S. Dist. LEXIS 76197 (N.D. Cal. Oct. 11, 2006) (same).

17    The Company has been advised that the individual Defendants anticipate filing

18    motions to dismiss the claims in the instant action at such time as their answers or Rule 12

19    motions are due.  Accordingly, the discovery stay applies at the outset of an action where,

20    as here, the Defendants intend to move to dismiss the Complaint at such time as their

21    response to the Complaint is due.  *See, e.g.*, *In re Trump Hotel Shareholder Deriv. Litig.*,

22    1997 U.S. Dist. LEXIS 11353, *3-*4 (S.D.N.Y. Aug. 5, 1997) (discovery stay applies

23    prior to filing of anticipated motion to dismiss).  Moreover, because the same claims are

24    subject to a discovery stay during the pendency of the motions to dismiss the related, first-

25    filed *Apollo II* action, discovery should be stayed in this action as well to avoid

26    circumventing the stay of discovery in place there to the Company's detriment.  *See, e.g.*,

27    *In re AOL Time Warner, Inc. Sec. Litig.*, 2006 WL 1997704 (S.D.N.Y. July 13, 2006)

28    (staying discovery in ERISA action to avoid circumvention of stay in class action).

-16-

## IV.   CONCLUSION.

For the foregoing reasons, the Company respectfully requests that the Court stay the instant derivative action during the pendency of the *Apollo II* class action against Apollo, subject to any determination by the Company's Special Committee that the stay should be lifted, and pending completion of that Committee's investigation.

July 28, 2011.                                                  **MORGAN LEWIS & BOCKIUS LLP**

By:   *s/* Joseph E. Floren
        Joseph E. Floren (*pro hac vice*)
        Morgan, Lewis & Bockius LLP
        One Market, Spear Street Tower
        San Francisco, CA 94105-1126

        *Attorneys for Nominal Defendant*
        *Apollo Group, Inc.*

### CERTIFICATE OF SERVICE

☒     I hereby certify that on July 28, 2011, the attached document was electronically submitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

s/ Matthew S. Weiler
Matthew S. Weiler

-17-