WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darlene Smith, derivatively on behalf of Apollo Group, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>John G. Sperling, Peter V. Sperling, Charles B. Edelstein, Gregory W. Cappelli, Terri C. Bishop, Dino J. Deconcini, Samuel A. Dipiazza, Jr., Stephen J. Giusto, Roy A. Herberger, Jr., Ann Kirschner, K. Sue Redman, James R. Reis, Manuel F. Rivelo, George Zimmer, Joseph D'Amico, Gregory J. Iverson, Brian L. Swartz, Brian Mueller, P. Robert Moya, Robert W. Wrubel, William J. Pepicello,<br><br>Defendants,<br><br>vs.<br><br>Apollo Group, Inc., an Arizona corporation,<br><br>Nominal Defendant. | No. CV 11-722-PHX-JAT<br><br>**ORDER** |

Pending before the Court are (1) the Individual Defendants' Motion to Dismiss (Doc. 71), and (2) Nominal Defendant Apollo Group, Inc.'s Motion to Dismiss Plaintiff's Derivative Complaint (Doc. 74). The Court now rules on the Motions.

**I.    BACKGROUND**

Plaintiff brings this shareholder derivative lawsuit against various officers and

directors of Apollo Group, Inc. ("Apollo"), alleging violations of federal securities laws and state law claims for breaches of fiduciary duties, abuse of control, gross mismanagement, unjust enrichment, corporate waste, and insider trading. This Court presided over related putative securities class action *In re Apollo Group, Inc. Securities Litigation*, No. CV-10-1735-PHX-JAT ("*Apollo II*"). *Apollo II* was a shareholder class action suit against Apollo Group, Inc. and nine officers and directors of Apollo Group, Inc. for violations of federal securities laws. The nine officer and director Defendants in *Apollo II* were among the twenty-one individual Defendants in this case.[1]

Apollo is an Arizona-based-company that owns and operates proprietary postsecondary education institutions and is one of the largest private education providers in the United States. Students enrolled in Apollo institutions are entitled to receive financial assistance pursuant to Title IV of the Higher Education Act, 20 U.S.C. § 1070, *et seq.* ("Title IV"). Institutions that receive Title IV funds must comply with regulations, including a limit on the ratio of government loan funds to cash revenue (the "90/10 Rule") and limits on the percentage of student borrowers who default on their loans (the "Cohort Default Rate"). Violations of these regulations could result in the possible loss of Title IV accreditation.

### A.     Securities Fraud Allegations

Plaintiff alleges that Apollo's officers and directors targeted students with deceptive marketing techniques, knowing that those students were "not suitable candidates for higher education" and did so with the intention of tapping into "Title IV's vast reservoir of federal funds." (Complaint, Doc. 1 at ¶ 4). Plaintiff alleges that these hard-sell tactics resulted in increased enrollment at Apollo institutions, but Apollo falsely attributed the increased enrollment to valuable service offerings and commitment to academic quality. (*Id.*). To support her allegation that Defendants engaged in deceptive

---

[1] The nine individual Defendants named in both actions are Gregory W. Cappelli, Joseph L. D'Amico, Charles B. Edelstein, Gregory J. Iverson, Brian Mueller, William J. Pepicello, John Sperling, Peter V. Sperling, and Brian L. Swartz.

recruiting practices, Plaintiff points to examples in a report issued by the United States General Accounting Office (the "GAO") that Plaintiff alleges show that Apollo representatives lied about the graduation rate to prospective students and encouraged them to take the full amount of loans available to them, even if taking the full amount was not necessary. (*Id.* at ¶¶ 53-55). Plaintiff also points to a Bloomberg Report of April 30, 2010 that reported that University of Phoenix (an Apollo campus) recruiters went to homeless shelters and marketed educational opportunities to homeless people. (*Id.* at ¶ 56).

Plaintiff alleges that, while Apollo Group's Officers and Directors were making these false and misleading statements, Defendants John Sperling, Peter Sperling, Charles B. Edelstein, Gregory W. Cappelli, Terri C. Bishop, Dino J. Deconcini, Ann Kirschner, K. Sue Redman, James R. Reis, Joseph D'Amico, Gregory J. Iverson, Brian L. Swartz, P. Robert Moya, Robert W. Wrubel, William J. Pepicello (the "Insider Selling Defendants") sold over $470 million of their privately held stock at artificially inflated prices and caused the Company to repurchase over $1.3 billion of its own stock at artificially inflated prices. (*Id.* at ¶¶ 6, 38). Plaintiff alleges that the Board improperly authorized Apollo's senior officers to repurchase outstanding shares of Apollo Group common stock at artificial prices that were the result of the false and misleading statements regarding Apollo's growth and recruitment. (*Id.* at ¶¶139-145).

Plaintiff alleges that, as a result of unqualified students enrolling in Apollo's schools, many students had to drop out and were unable to repay their Title IV loans. (*Id.* at ¶ 5). Plaintiff alleges, that, as a result, Apollo's compliance with the Cohort Default Rate was jeopardized and, in response, Apollo's officers and directors resorted to manipulative practices to maintain regulatory compliance with Title IV. (*Id.*). Plaintiff alleges that Apollo was required to return the unearned portion of the proceeds of the student's Title IV loans to the lender, but, to maintain compliance with the Cohort Default Rate, Apollo returned the entirety of the Title IV funds to the lender, even though

the student was entitled to have the earned portion of the funds credited to their tuition. (*Id.*). Plaintiff alleges that Apollo then billed the student for the full amount of the tuition. (*Id.*). Plaintiff alleges that this return of student money to the lenders also helped them comply with the 90/10 Rule because these students, who were no longer recipients of Title IV funds, were counted toward the 10% of revenues that had to be derived from non-Title IV sources. (*Id.* at ¶ 65).

Plaintiff alleges that the 90/10 calculation and the Cohort Default Rate were deliberately false and misleading because Apollo did not disclose that it was allegedly violating Title IV regulations as described above. (*Id.* at ¶ 67).

Plaintiff also alleges that Apollo evaluated and compensated its recruiters based on the number of students they enrolled in violation of Title IV. (*Id.* at ¶ 57). Plaintiff alleges that, on August 3, 2010, the GAO issued a report that for-profit educational institutions, "like Apollo Group" had engaged in illegal and fraudulent conduct. (*Id.* at ¶ 7). Plaintiff alleges that as a result of the GAO report, Apollo's shares declined from $47.14 per share on August 2, 2010 to $38.94 on August 13, 2010. Plaintiff alleges that, on October 13, 2010, Apollo withdrew its previous 2011 fiscal year outlook and stated that it would be changing admissions personnel, evaluation and compensation systems, adding a new orientation program, and would reduce its emphasis on third-party affiliates for lead generation and otherwise enhance its marketing approach. (*Id.* at ¶ 131). Apollo also stated that the Company expected a decline in new degreed enrollment in the fourth quarter of 2010 to the first quarter of 2011. (*Id.* at ¶ 7).

Plaintiff alleges that "based on this news," shares in Apollo dropped 23% to a four year low of $38. (*Id.* at ¶ 8). Plaintiff alleges that Yahoo! Finance, Reuters, and the Wall Street Journal reported that Apollo was being sued for securities fraud, being investigated by the Florida Attorney General for deceptive enrollment practices, and being investigated by the SEC for insider trading between October 19 and October 26. (*Id.* at ¶¶ 9-11, 132-135). Plaintiff alleges that, as a result of these disclosures, Apollo's stock

- 4 -

fell from $47.14 on August 2, 2010 to $36.94 on October 26, 2010. (*Id.* at ¶ 135).

Plaintiff alleges that the following statements were false and misleading:

- In a May 22, 2007 10-Q, Apollo attributed its enrollment growth to "product development," "marketing," and "lead generation." (*Id.* at ¶ 71).
- In a May 22, 2007 Annual Report, Apollo falsely attributed enrollment and revenue growth to "comprehensive service," "quality educational content," "teaching resources, and "customer service." (*Id.* at ¶ 73).
- In May 22, 2007 10-Qs, Apollo stated that increases in New Degreed Enrollment and increases in revenue helped fund investment in "product development and marketing and lead generation to ensure our continued growth and viability in the future." (*Id.* at ¶¶ 75, 77).
- In a May 22, 2007 conference call, Apollo attributed improvement on retention rates to lead quality and delivery models. (*Id.* at ¶ 78).
- In a May 27, 2007 10Q-A, Defendant Mueller was quoted as saying that enrollment and revenue growth were attributable to "further productivity improvements from new enrollment hires, enhanced retention strategies," "efficiencies'" in advertising spending and a branding campaign. (*Id.* at ¶ 80).

Plaintiff alleges that Apollo Officers and Directors made similar false and misleading statements through the remainder of 2007, throughout 2008, 2009, and continuing through June 2010. (*Id.* at ¶¶ 81-126). Plaintiff alleges that, based on the above statements, Apollo created the false public impression that the Company's increased enrollment revenue resulted primarily from Apollo's ability to attract new students through enhanced and expanded educational services and improvements in academic quality, when, in truth, the increased revenue resulted from Apollo's deceptive and unsustainable business model. (*Id.* at ¶ 126).

Plaintiff alleges that, on August 6, 2010, Apollo announced that it received a request for information from the U.S. Senate Committee on Health, Education, Labor, and Pensions relating to for-profit colleges receiving Title IV student financial aid. (*Id.* at ¶ 129). Plaintiff alleges that, on August 16, 2010, Apollo disclosed that it had received a letter from the Higher Learning Commission ("HLC") requiring Apollo to provide certain information and evidence of compliance with HLC accreditation standards. (*Id.* at ¶

- 5 -

130).

## B. Breach of Fiduciary Duty Allegations

Plaintiff alleges that Defendants breached their fiduciary obligations of trust, loyalty, good faith, and due care by failing to disseminate accurate and truthful information regarding the Company's operations, performance, management, projections, and forecasts. (*Id.* at ¶165). Plaintiff alleges that members of the Audit Committee breached their duties under the Audit Committee Charter because they reviewed the financial statements with the allegedly false information and approved of those statements. (*Id.* at ¶ 166). Plaintiff alleges that Defendants breached their duties arising from their positions of control and authority and access to improper representations of Apollo Group, including information regarding the student admissions rate and future growth rate. (*Id.* at ¶¶ 167-169). Plaintiff alleges that Defendants breached their duty to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls over the company. (*Id.* at 170).

## C. Conspiracy, Aiding and Abetting, and Concerted Action Allegations

Plaintiff alleges that the individual Defendants aided and abetted and assisted each other in breaching their respective duties by disguising their breach of fiduciary duty, misrepresenting Apollo's future business prospects, and making it appear that Apollo was in compliance with the Cohort Default Rate and the 90/10 Rule (*Id.* at ¶¶ 173-177).

## D. The Counts of the Complaint

As a result of the above allegations, Plaintiff alleges claims of (1) violations of section 10(b) of the Securities and Exchange Act and Securities and Exchange Rule 10b-5 against certain individual Defendants (Count I); (2) violations of section 20(a) of the Securities and Exchange Act against the Director Defendants (Count II), (3) breach of fiduciary duty against all Defendants (Count III), (4) breach of fiduciary duty for insider selling and misappropriation of information against certain individual Defendants (Count

1  IV), (5) breach of fiduciary duty for authorizing and failing to halt the company's stock
2  purchases against the director Defendants (Count V), (6) waste of corporate assets against
3  all Defendants (Count VI), and (7) unjust enrichment against certain individual
4  Defendants (Count VII).

### D. The Demand

Plaintiff alleges that, pursuant to Arizona Revised Statutes section 10-742, Plaintiff made a written litigation demand on the Board of Directors on December 9, 2010, and did not receive a response. (*Id.* at ¶¶ 12, 182-184).

## II. THE MOTIONS TO DISMISS AND STANDING

Both Apollo and the Individual Defendants have filed Motions to Dismiss. Apollo's Motion to Dismiss solely challenges Plaintiff's standing to bring this action on behalf of Apollo. The Individual Defendants challenge the Complaint on several grounds, including standing. After initial review of the Parties' arguments regarding standing, this Court found that, under the circumstances of this case, Plaintiff had failed to adequately allege standing. (Doc. 83; *Smith ex rel. Apollo Group, Inc. v. Sperling*, No. CV 11-722-PHX-JAT, 2012 WL 1745594, at * 1 (D. Ariz. May 16, 2012)).[2] Although Plaintiff failed to respond to the Motions to Dismiss with any evidence of her standing, the Court nonetheless allowed Plaintiff an additional opportunity to allege her standing to

---

[2] At the pleading stage, the Complaint must "allege that the plaintiff was a shareholder at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Fed.R.Civ.P. 23.1(b)(1); *Baca v. Crown*, No. 10-16718, 458 Fed.Appx. 694, 696 (9th Cir. Nov. 21, 2011 (stating that it was necessary for Plaintiff to show that he was a shareholder at the time of the transaction/events complained of because a derivative plaintiff may only complain about actions that allegedly occurred during the period for which he held shares).

After considering Plaintiff's arguments that she need not allege with specificity the dates that she was a shareholder in Apollo, the Court found that, under the circumstances of this case, such specificity is required. *See Smith*, 2012 WL 1745594, at *2 ("where, as here, Plaintiff has claims that span over three years and Defendants have challenged Plaintiff's standing/contemporaneous ownership, the Court has no way to adequately analyze whether Plaintiff has standing to assert all of her claims . . . [a]ccordingly, the Court will give Plaintiff one final chance to establish that she has standing to assert the derivative claims [and] such supplement shall *solely* address the standing issue discussed herein.") (emphasis added).

- 7 -

bring this case on behalf of Apollo and ordered Plaintiff to supplement her response to the Motion to Dismiss. (*Id.* at *2).

Plaintiff filed a supplement to her Response. (Doc. 84). However, rather than directly allege standing, Plaintiff chose to use four of the five pages allotted to reargue that she had no obligation to allege standing, citing to the same cases she previously cited to in her Response to the Motion to Dismiss. It is improper procedurally for Plaintiff to use the Court's allowance of a supplement, which the Court specified should be used *solely* to allege standing, as the opportunity to assert what is essentially a Motion for Reconsideration.

Plaintiff aggravated this improper course by failing to even attempt to meet the high standard for reconsideration. *See Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003) (finding that reconsideration is only appropriate when there are material differences in fact or law, material facts arose after the Court's decision, or the movant makes a convincing showing that the court failed to consider material facts and warning that "[n]o motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion."). Rather, Plaintiff continues to rely on a distinguishable, non-binding 1944 Second Circuit decision, which she previously cited in her original Response to the Motion to Dismiss.[3] This does not constitute an intervening change in controlling law or any showing that the Court failed to consider material facts in its initial decision.

Further, the Second Circuit opinion suggests that a more proper challenge to a 23(e) violation would be a motion for a more definite statement under Rule 12(e). *See*

---

[3] Notably the Second Circuit's opinion seems to suggest a pleading standard that is inconsistent with the United States Supreme Court's decisions in *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that to survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face.").

*Galdi v. Jones*, 141 F.2d 984, 992 (2nd Cir. 1944). Plaintiff cites to this very language from *Galdi* in her supplement to the Motion to Dismiss, but appears to completely ignore the fact that, by allowing her to supplement her Response to the Motion to Dismiss, this Court essentially ordered Plaintiff to make a more definite statement, to avoid having this case dismissed for lack of standing.[4]

Finally, it appears that Plaintiff makes this argument because, when required to actually allege standing with some specificity, Plaintiff's allegation in her Complaint that she "was a shareholder of Apollo Group at the time of the transactions and events complained of herein, and has continuously held the stock" is patently false. Plaintiff admits in her Supplement that she became an Apollo stockholder on August 19, 2009 and the events and transactions alleged in her complaint allegedly occurred throughout 2007, 2008, 2009, and 2010. Such a false allegation in the Complaint cannot be saved by Plaintiff's ongoing contention that contemporaneous ownership is not a requirement. That is a legal argument and has little to do with Plaintiff's false factual allegation (whether legally required to allege standing or not) that she did indeed own Apollo stock at the "time of the transactions and events complained of herein." Based on the

---

[4] Plaintiff also argues that it is improper for the Court to require Plaintiff to plead additional facts in a pleading and the Court should only review the four corners of the Complaint in deciding the Motion to Dismiss. If the Court confined its review to the four corners of the Complaint, Plaintiff's Complaint would be dismissed for lack of standing. The Court made this clear in its Order allowing Plaintiff to supplement her Response to the Motion to Dismiss. *See Smith*, 2012 WL 1745594, at *2 ("If Plaintiff fails to file a supplement within 10 days of the date of this Order, the Motions to Dismiss pending before this Court will be granted without further warning.").

The Court will assume that Plaintiff's argument that the Court should confine its review of the sufficiency of the Complaint to the four corners of the Complaint is not a concession that Plaintiff's Complaint should be dismissed for lack of standing. If the Court did confine its review to the Complaint, however, the Court would have no choice but to grant the Motions to Dismiss for lack of standing. The Court allowed a supplement to give Plaintiff an opportunity to avoid dismissal based on a deficiency that Plaintiff may have been able to cure without significant further motion practice. If anything, Defendants have been prejudiced by the Court's willingness to look outside the four corners of the Complaint to determine whether Plaintiff has adequately asserted standing. However, Defendants have not objected to this equitable procedure, so the Court will consider Plaintiff's supplement for the purposes of considering the Motions to Dismiss.

foregoing, the Court is compelled to remind Plaintiff's counsel that Federal Rule of Civil Procedure 11 requires factual contentions alleged in the complaint (or any other pleading) to have evidentiary support. *See* Fed. R. Civ. P. 11.

Nonetheless, the Court will now consider whether Plaintiff has standing to allege the claims made on behalf of Apollo. Plaintiff argues that, although she did not own stock at the times of all of the transactions and events complained of, as alleged in her Complaint, she still has standing to bring these claims under the continuing wrong doctrine.

### A.  **Legal Standard**

The Ninth Circuit Court of Appeals has held that, to meet the continuous ownership requirement in Federal Rule of Civil Procedure 23.1(a), a shareholder must be a shareholder at the time of the alleged wrongful acts and must retain ownership of the stock for the duration of the lawsuit. *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (internal citation omitted). Likewise, under Arizona law,

> A shareholder may not commence or maintain a derivative proceeding unless the shareholder both:
>
> 1. Was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time.
>
> 2. Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

Ariz. Rev. Stat. Ann. § 10-741.

Delaware has recognized a limited exception to the continuous ownership requirement, which, under certain circumstances, allows a Plaintiff to maintain a derivative suit for certain violations that began before the Plaintiff held stock in the corporation and continued into Plaintiff's acquisition of stock. The Delaware Court of Chancery has noted that this exception "has never been defined by Delaware courts with much precision," but it is clear that "the doctrine is a narrow one that typically is applied only in unusual situations, such as where a plaintiff acquires his stock after a particular

transaction has begun but before it is completed." *Desimone v. Barrows*, 924 A.2d 908 (Del Ch. 2007). Further, under Delaware law, "the continuing wrong doctrine does not bestow standing upon a stockholder to challenge transactions occurring before he bought his stock simply because they are similar or related to transactions or other conduct that occurred later." *Id.*

Plaintiff has not cited to any authority in the Ninth Circuit or in Arizona suggesting that the Ninth Circuit or Arizona have adopted the continuing wrong doctrine or any doctrine of equivalence. However, the Court finds that, even if the continuing wrong exception was applicable in these jurisdictions, this narrow exception does not apply to the claims currently before the Court. In this case, Plaintiff alleges a variety of separate false and misleading statements made over a period of years that were allegedly slowly revealed to the public, causing Apollo's stock price to drop on several different occasions. These allegations do challenge transactions occurring before Plaintiff bought her stock. While these allegations are similar to the allegedly false statements Plaintiff alleges that Defendants made after she owned Apollo stock, such similarity does not confer standing on Plaintiff to challenge transactions that occurred before she owned such stock. Accordingly, even if the continuing wrong doctrine did apply as an exception to standing in the Ninth Circuit and/or Arizona, Plaintiff has not shown that the continuing wrong doctrine applies to this case.

Accordingly, Plaintiff has failed to satisfy the contemporaneous/continuous ownership requirement of Rule 23.1, and therefore lacks standing to bring a shareholder derivative suit based on alleged acts that occurred prior to her stock ownership. The Court will not undertake to parse Plaintiff's Complaint to try to determine which alleged acts she might have standing to assert. Accordingly, the Court will grant Plaintiff leave to amend her Complaint to make allegations that she actually has standing to assert.

Further, Plaintiff acknowledges that *In re Apollo Group, Inc. Sec. Litig.*, No. CV 10-1735-PHX-JAT, 2011 WL 5101787 (D. Ariz. Oct. 27, 2011), which was released after Plaintiff filed her Complaint, found that allegations nearly identical to Plaintiff's

allegations were not sufficient to state claims under sections 10(b), 20(a) and Rule 10b-5 of the Exchange Act. Plaintiff requests leave to amend her Complaint to cure the deficiencies identified in that opinion.

Because the Court has found leave to amend necessary to correct any deficiencies with regard to Plaintiff's standing, Plaintiff should take this opportunity to correct any other existing deficiencies with her Complaint. The Court notes that in any amended Complaint, Plaintiff must plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) and must include a proper verification in compliance with Federal Rule of Civil Procedure 23.1(b) and 28 U.S.C. §1746.[5] Further, the Court notes that although Plaintiff names twenty-one individual Defendants, she fails to include allegations related to specific Defendants. To the extent Plaintiff chooses to name individual Defendants in her amended Complaint, she must include specific allegations about that specific Defendant's actions and she must include facts connecting those actions to her legal claims. Plaintiff should also carefully examine her allegations in light of this Court's decisions in *Apollo II*. *See In re Apollo Group, Inc. Sec. Litig.*, No. CV 10-1735-PHX-JAT, 2011 WL 5101787 (D. Ariz. Oct. 27, 2011); *In re Apollo Group, Inc. Sec. Litig.*, No. CV 10-1735-PHX-JAT, 2012 WL 2376378 (D. Ariz. June 22, 2012).

---

[5] Plaintiff argues that 28 U.S.C. § 1746 should not apply to Federal Rule of Civil Procedure 23.1's verification requirement because it is an evidentiary rule, not a rule of pleading and matters of evidence are never required to be stated in a Plaintiff's Complaint. The Court disagrees. While it may be true that a non-verified complaint need not meet evidentiary standards, once a complaint is verified, it must meet the requirements for verification. This is so because a verified complaint can be used throughout the case for evidentiary purposes, such as in the summary judgment context. Accordingly, if a Complaint is required to be verified, as under Rule 23.1, it must be able to withstand scrutiny as a verified Complaint for any purpose throughout the case, as is required by 28 U.S.C. § 1746.

Plaintiff also argues that, if the Court required 23.1 verifications to comply with 28 U.S.C. § 1746, the Court would impose a requirement not present in Rule 23.1. The Court disagrees. Plaintiff cites to no cases that support this contention. 28 U.S.C. § 1746 unambiguously applies to "any law of the United States or . . . any **rule**, regulation, order, or requirement made pursuant to law, [which requires] any matter . . . **required** or permitted to be supported, evidenced, established, or proved by the sworn declaration, **verification**, certificate, statement, oath, or affidavit, in writing of the person making the same" 28 U.S.C. § 1746 (emphasis added). The Court sees no reason why Rule 23.1 would be an exception to the statute.

### III. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Individual Defendants' Motion to Dismiss (Doc. 71) is granted.

**IT IS FURTHER ORDERED** that Nominal Defendant Apollo Group, Inc.'s Motion to Dismiss Plaintiff's Derivative Complaint (Doc. 74) is granted.

**IT IS FINALLY ORDERED** that Plaintiff is granted leave to amend and shall file an amended complaint within thirty days of the date of this Order. If Plaintiff does not file an amended Complaint within thirty days, the Clerk of the Court, must, without further notice, enter a judgment of dismissal in this action.

Dated this 25th day of July, 2012.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge